Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

Attorneys for Plaintiff
Vampire Family Brands, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION, CONTRIBUTORY TRADEMARK INFRINGEMENT, INDUCEMENT, VICARIOUS LIABILITY, AND COMMON LAW UNFAIR COMPETITION.** |
| v. | |
| TREASURY WINE ESTATES LIMITED, TREASURY WINE ESTATES AMERICAS COMPANY, TREASURY WINE ESTATES HOLDINGS, INC, and DOES 1 through 10 inclusive, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Vampire Family Brands, LLC hereby alleges and asserts:

## I.    JURISDICTION AND VENUE

1.    Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

**COMPLAINT**

2.      This action arises under the Trademark Laws of the United States, including, particularly, Section 43 of the Lanham Act, 15 U.S.C. § 1125. Jurisdiction is conferred on this Court by 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq*, and by principles of pendent jurisdiction.

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims occurred in this district and Defendant Treasury Wine Estates, Limited is an alien.

## II.    **THE PARTIES**

4.      Plaintiff, Vampire Family Brands, LLC ("Vampire Family Brands") is a Delaware Limited Liability Company located in Ventura County, California.

5.      According to its press releases, Defendant Treasury Wine Estates, Limited is the world's largest premium wine company. Upon information and belief, Defendant Treasury Wine Estates, Limited is a publicly traded Australian Company, headquartered in Australia and with offices in Paso Robles, California and Napa, California.

6.      Upon information and belief, Defendant Treasury Wine Estates Americas Company is a Delaware Corporation with business locations in Paso Robles, California and Napa, California.

7.      Upon information and belief, Defendant Treasury Wine Estates Holdings, Inc. is a Delaware Corporation with business locations in Paso Robles, California and Napa, California.

8.      Upon information and belief, Defendants Treasury Wine Estates, Limited, Treasury Wine Estates Americas Company, and Defendant Treasury Wine Estates Holdings, Inc. all have common ownership and are essentially all one and the same, or in other words alter-egos of each other, as they are all

controlled by the same management.   These three defendants are referred to herein as ("Defendants TWE.")

9.     Within at least the past month, Defendants have solicited orders for wine that infringes Plaintiff's trademarks and have sold and ship the infringing wine to residents throughout this district including to residents of Ventura, California, and Defendants continue to offer the infringing product for sale to residents of California, including those residing within this district.

10.     Within the past month, Defendants have solicited orders for wine that infringes Plaintiff's trademarks and have sold and shipped the infringing wine to wholesale distributors and retailers within this district and throughout the country, and Defendants continue to offer the infringing product for sale to wholesale distributors and retailers in this district and throughout the US.

11.     Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 10 inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were  proximately caused by the conduct of such defendants.

12.     Plaintiff is informed, believes, and alleges that, at all times herein mentioned, each of the Defendants were the agents, servants, employees, or attorneys of their codefendants and, in doing the things hereinafter alleged, were acting within the purpose, course, and scope of such agency and employment, and with the authority, permission, and consent of their codefendants.

## III.   FACTS

### A.  Plaintiff's Vampire Family Trademarks

13.    Vampire Family Brands, via its predecessors in interest, has been marketing for many years wine, food and beverages under several federally registered trademarks consisting of or relating to the term VAMPIRE and DRACULA  (collectively, the Vampire Family marks). The Vampire Family marks include the following federal registrations, many of which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065:[1]

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
| DRACULA | 3319536* | Wine |
|  | 6562370 | Hamburger sandwiches |
| FANGRIA | 4451648* | Sangria; wine |
| SIP THE BLOOD OF THE VINE | 3079403* | Wine and distilled spirits |
| THE TASTE OF IMMORTALITY | 3167606* | Wine and distilled spirits |
| VAMPIRE | 2263907* | Wine |
|  | 3290011* | Glass- and beverage-ware |
|  | 3669827* | Chocolate and coffee |
|  | 3978444* | Restaurant and bar services |
|  | 5444375 | Pre-mixed alcoholic beverages, other than beer based; pre-mixed alcoholic cocktails |

---

[1] Plaintiff's marks that have become incontestable through their use—if not all of the above marks—are denoted by an asterisk (*) following their U.S. Registration Numbers.

| | 6329522 | Hamburger sandwiches |
|---|---|---|
| VAMPIRE TACO | 4939034* | Tacos |
| VAMPYRE | 3082097* | Distilled spirits |

14.     The origin of Vampire wine, and Vampire Family Brand's claim of right, goes back to 1988, when its founder released a French-bottled Algerian Syrah under the brand name Vampire.  The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine."  Although the labels have changed over the years, along with the sourcing from Algeria to Italy then to Transylvania and, finally, to Napa, the marketing has remained similarly playful.

15.     However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and scores of 90 Points and higher from various critics.  Plaintiff has built up a very large and loyal following of thousands of people that love its wines.  Many of its customers have taken the time and effort to write five-star reviews on Plaintiff's website vampire.com.

16.     In addition to selling wine, Plaintiff, via its predecessors in interest, expanded its wine and spirits business into gourmet quality foods, including Vampire Fine Belgian Chocolate and Vampire Gourmet Coffee.  New products arriving shortly include a gourmet ready to drink absinthe cocktail.

17.     Plaintiff's VAMPIRE family of brands are available for the world to see on its website www.Vampire.com. Plaintiff has received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, the Star Tribune, the Chicago Sun Times, and many more.  (*See*

Exhibit A).   In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper (with Ashley Greene from Twilight fame), CNN Headline News, MTV's Viva La Bam, Food TV, and many more.  (*See* Exhibit A).

18.    Plaintiff markets its brands through a national network of wholesalers and via www.vampire.com.  For instance, VAMPIRE wine can be found nationally in chains of retail stores, including the Safeway supermarkets, Publix markets, Cost Plus World Market, the Yard House chain of restaurants, and elsewhere.

19.    Plaintiff, through its predecessors in interest, has been selling its VAMPIRE Wine continuously in the US since 1995.  Plaintiff through its predecessors in interest has been selling its DRACULA wine continuously in the United States since at least 2007.

20.    Plaintiff has sold its VAMPIRE wine and DRACULA wine to many of the same wholesalers, including retailers and distributors, that Defendants TWE market its wines, including its infringing wines, to.

21.    Plaintiff sells its VAMPIRE wine and DRACULA wine from its website [www.vampire.com](www.vampire.com) as well as through a national network of distributors and retailers, including to restaurants and cafes.

22.    Plaintiff and its associates have worked hard to ensure that they put the best wine in the bottle as possible.  Over the last few years, Plaintiff's Vampire family of wines have received great reviews and won gold medals in many competitions, including the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, and Vampire Pinot Noir; the Los Angeles Invitational Wine challenge for its Vampire Cabernet Sauvignon and Vampire Pinot Noir; the Access Live Wine & Spirits Tasting Competition for its Vampire Merlot; and the Texas International Rodeo Wine

Competition.    Further, the Los Angeles International Wine & Spirits Competition gave Vampire Cabernet Sauvignon a rating of 92 points out of 100.   Plaintiff's highest-end wine, Trueblood Cabernet Sauvignon, has been rated 92 points and 97 points out of 100 by critics.

23.   Plaintiff has spent substantial amounts of time and money establishing, advertising, and promoting its Vampire family of brands. Plaintiff has established valuable goodwill through its brands' popularity, its advertising and sales, and its websites (including www.Vampire.com).   This goodwill is embodied by Plaintiff's Vampire Family marks.

**B. Defendants' Unauthorized Use of Plaintiff's Vampire Family Marks**

24.   Defendants control a brand of wines called 19 Crimes which originally featured photographs and stories of Australian prisoners on its wine labels, and the back label contained a scannable code that gave consumers a brief history about the unknown Australian criminal on the front label.

25.   Eventually, Defendants TWE expanded its brand to include Martha Stewart (who spent some time in jail for a securities law related violation) and Snoop Dog (who had been charged with murder and found innocent of the charges.).   The strategy of going from unknown felons to celebrities appears to have worked for Defendants TWE as its products appear to be present throughout numerous retailers that sell wine, including retailers that also sell Plaintiff's wine.

26.   Recently, Plaintiff learned that Defendants TWE has expanded its 19 Crimes wines further and is now offering an infringing 19 Crimes Dracula Red Blend ("the Accused Product") that infringes upon Plaintiff's preexisting family of marks.

**COMPLAINT**

27.     Defendants TWE are soliciting orders from its website https://19crimes.com for its infringing Dracula Red Blend and shipping to residents throughout many states of the US, including California,

28.     Upon information and belief, Defendants TWE are in the process of selling its infringing Dracula Red Blend to its network of distributors for them to sell to retail stores and restaurants and bars throughout the country.

29.     A printout from Defendants' website showing images of Defendants' infringing products unlawfully using Plaintiff's trademarks is attached as Exhibit B.

30.     Notably, Defendants' write,

*Dracula is a vampire who has lived for centuries. And you know a 500-year-old dinner guest is going to have some great stories. So, pour him a glass, and let's get the evening started. Just no garlic, please*

**Tasting Notes**
*Dracula Red Blend is rich and round with a soft fruity finish. Sweet aromatics with notes of chocolate.*

31.     All defendants' unlawfully profit from the sales from defendants' website www.19crimes.com and from its sales to distributors and retailers.

32.     Defendants TWE sell its infringing Dracula Red Blend on its website for $18 a bottle and upon information and belief earns about $15.00 profit from each bottle it sells on its website.   Upon information and belief, Defendants TWE earn about $5 per bottle of its infringing Dracula Red Blend that it sells through its national distribution network, its distributors earn about $4 per bottle of each infringing Dracula Red Blend sold,  and its retailers earn about $5 per bottle of each Dracula Red Blend sold.  All of these profits rightfully belong to Plaintiff who owns the DRACULA trademark and has been selling VAMPIRE wine, VAMPYRE vodka, DRACULA wine and other related products for years.

**COMPLAINT**

33.     Defendants knew of Plaintiff's prior existing and trademarked VAMPIRE family of brands, and willfully decided to infringe upon Plaintiff's trademarks because they are the largest premium wine company in the world and have the money to pay attorneys to fight this out in court while they cash in unlawfully exploiting Plaintiff's trademarks for a Halloween promotion designed to benefit Defendants and harm Plaintiff.

34.     Defendants' intentional and wrongful infringing acts are harming Plaintiff's brands' reputation and are diluting Plaintiff's Vampire Family brands.

35.     If Defendants are not stopped from marketing their infringing Dracula Red Blend by using Plaintiff's DRACULA mark, or marks confusingly similar to VAMPIRE or DRACULA — then consumers will likely be confused about the source and origin of Defendants' products and services and mistakenly conclude that Defendants' products or services are associated with Plaintiff and/or its licensees.

36.     Alternatively, if Defendants are not stopped from using Plaintiff's DRACULA mark—or marks confusingly similar to VAMPIRE or DRACULA—then consumers will likely be confused about the source of Plaintiff's or its licensees' products and services and mistakenly conclude that Plaintiff's or its licensees' products or services are associated with Defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

37.     Plaintiff realleges the allegations in paragraphs 1 through 36.

38.     Defendants use of "Dracula" and "Vampire" on the packaging and description and other marketing for its infringing wine is identical to Plaintiff's trademarks DRACULA and VAMPIRE.  Because the marks are identical, the marks are likely to engender the same connotation and overall commercial impression when considered in connection with Defendants' wine and with

Plaintiff's wines, spirits, ready-to-drink canned spirit cocktails, burgers, restaurant services, and other goods, including its coffee and chocolate, and the forthcoming Dracula beer.

39. The goods and services for which Defendants unlawfully use the Dracula mark and Vampire mark is identical to or closely related to the goods and services for which Plaintiff uses its DRACULA and VAMPIRE marks giving rise to the mistaken belief that the goods and services of the parties have the same source.

40. The likelihood of confusion is even greater given that both Plaintiff and defendants sell their products online to the same consumers and to the same distributors and retailers.

41. Furthermore, the channels of trade and class(es) of purchasers are the same for both Plaintiff's and Defendants' goods and services, and the price of Defendants' wine and Plaintiff's wine  are similar,  further resulting in a likelihood of confusion.

42. Defendants' use of the words "Dracula" and "Vampire" so closely resembles Plaintiff's products and services that the public is likely to be confused and deceived, and to assume erroneously that Defendants' infringing wine are produced by Plaintiff or under Plaintiff's direction; that Defendants' offerings are part of Plaintiff's family of brands; or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

43. Alternatively, Defendants' marketing and advertising efforts are likely to mislead consumers to believe that Plaintiff's goods and services may be the unauthorized use of Defendants' trademarks.  If Defendants continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the DRACULA and/or VAMPIRE marks.

44.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by Defendants.

45.     Plaintiff has no control over the nature and quality of the goods and services offered and sold by Defendants and its licensees.  Any failure, neglect, or default by Defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's continuing efforts to protect its outstanding reputation and further build that reputation. Said failure, neglect, or default will irreparably harm Plaintiff by causing loss of revenue to Plaintiff and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE and DRACULA marks.

46.     Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name DRACULA and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and sold products and services using the DRACULA and VAMPIRE marks (or marks confusingly similar to) through persons not authorized by, employed by, or associated in any way with Plaintiff, and they have used the DRACULA trademark as a false designation and false representation for alcoholic beverage products.

47.     None of Defendants' activities described in this complaint have been authorized by Plaintiff. Defendants' unauthorized use of Plaintiff's trademarks and trade names in interstate commerce, or commerce substantially affecting interstate commerce, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names.  Such activities are likely to cause confusion, mistake, and to deceive the public at large.

48.     Upon information and belief, Defendants have acted with the unlawful purpose of:

    a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

    b. Soliciting Plaintiff's customers and potential customers, and attempting to sell and selling to such customers goods and services marketed under the DRACULA and VAMPIRE marks through persons not authorized by, employed by, or associated in any way with Plaintiff;

    c. Inducing others to infringe Plaintiff's trademarks and trade names; and

    d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

49.     Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

50.     If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint and the Defendants will profit thereby.  Furthermore, unless the Court permanently enjoins Defendants' infringing conduct, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

51.     This high-jacking of Plaintiff's DRACULA and VAMPIRE trademarks improved the marketability of Defendants' products  as the use of

the word "DRACULA" make Defendants' wine products more interesting. It led (and leads) to more people hearing about Defendants' wines in general leading them to come and try other products sold by Defendants, thus lowering Defendants' costs to advertise.

52.     Defendants are acting willfully and with an intent to use or abuse the goodwill Plaintiff has worked hard to develop.  Plaintiff is therefore entitled to at least $15 for every bottle of the infringing wine sold plus treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

53.     The intentional nature of defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

## COUNT II
## <u>VIOLATION OF LANHAM ACT 15 U.S.C. §1114</u>

54.     Plaintiff repeats each allegation contained in paragraphs 1 through 53 as though set forth herein at length.

55.     Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

56.     Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, be deceived, and erroneously assume that Defendants' infringing DRACULA branded wine, as packaged, advertised, promoted, and sold using Plaintiff's DRACULA and VAMPIRE marks, are Plaintiff's, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

57.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff.  Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

58.     Defendants have acted willfully and with an intent to ride on, step on, or demolish the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their Accused Products will hinder the future commercial success of Plaintiff's Vampire Family of brands, including its further foray into the beverage alcohol space. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs in addition to $15 per bottle sold.

## COUNT III
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125c

59.     Plaintiff repeats each allegation contained in paragraphs 1 through 58 as though set forth herein at length.

60.     Plaintiff's Vampire family of brands have appeared on The View, Anderson Cooper, CNN Headline News, Entertainment Tonight, MTV's Viva La Bam, The Food Channel, and A & E.  They have been written up in widely circulated magazines such as Star Magazine, Shape, Maxim, InStyle, Elle, Spin, Rolling Stone, Marie Claire, Cosmo Girl, and The Wine Enthusiast; as well as in regional newspapers such as the LA Times, the NY Times, and the Houston Chronicle.  (*See* Exhibit A).  As such, Plaintiff's brands have developed a fame all of their own, catapulting the Vampire brand into the category of a famous mark.

61.     Plaintiff's associates and predecessors in interest periodically work with Hollywood film companies and engage in mutually beneficial promotions.   For example, Plaintiff's products can be found in the Blade films (starring Wesley Snipes) and HBO's Trueblood Series.   Plaintiff has done promotions connecting its Vampire family of brands to films such as the Underworld series (starring Kate Beckinsale) and Blade Trinity.   Plaintiff's

wines also have been featured and poured at film premiers for *Dusk Til' Dawn* (written by Quentin Tarantino) and *Dark Shadows* (starring Johnny Depp).   A small sampling of the press talking about Plaintiff's Vampire family of brands is attached as Exhibit A.

62.     Plaintiff fears that Defendants' use of the word DRACULA as a mark for goods and services will ultimately cause consumers to believe that Plaintiff's branded wines, spirits, cocktails, coffee, chocolate and restaurants are not of the high quality that they actually are and will tarnish, dilute, and otherwise damage the reputation of Plaintiff's goods and services and/or interfere with and make it difficult for Plaintiff to continue expanding its brand portfolio. This will lead to irreparable harm to Plaintiff's goodwill, reputation, and sales.

## COUNT IV
## FOR CONTRIBUTORY TRADEMARK INFRINGEMENT

63.     Plaintiff repeats each allegation contained in paragraphs 1 through 62 as though set forth herein at length.

64.     In addition to marketing, selling, and advertising the Accused Product themselves, upon information and belief, Defendants have recruited other entities to infringe upon Plaintiff's trademarks in traditional retail wine shops and in bars and restaurants. These other entities include wholesale distributors, one in each state, plus many large supermarkets and national chain stores where wine is sold, as well as state governments, such as the New Hampshire State Government, which lists the Accused Product available for sale at its stores.   All of these wine stores that sell Defendants' Accused Product (as well as the bars and restaurants that sell Defendants' Accused Products) are referred to herein as "traditional downstream retailers."     Defendants are actively allowing, permitting and encouraging its wholesale distributors and these traditional downstream retailers to profit at

Plaintiff's expense while they jointly and severally combine to infringe upon Plaintiff's trademarks.

65.    Plaintiff also sells and or offers its products to the same traditional downstream retailers, which Defendants encourage to wrongfully advertise and sell the Accused Products.  Defendants conduct is detrimental to Plaintiff, and likely to cause confusion in the marketplace.

66.    When determining the relevant likelihood of confusion analysis for trademark infringement, the Ninth Circuit applies the *Sleekcraft Factors.* These factors undoubtedly weigh in Plaintiff's favor and establish trademark infringement.   For instance, Defendants' Accused Product, DRACULA Red Blend, uses the same marks as Plaintiff does on Plaintiff's DRACULA wine. Both parties are selling the exact same class of product, i.e., wine.   The exact same nature of the marks, the strength of the VAMPIRE and DRACULA marks when applied to Plaintiff's goods, the exact same channels of trade and likely channels of trade between Defendants' Accused Product and Plaintiff's goods, the price of each parties respective goods, general lack of consumer sophistication or degree of consumer care with respect to the selection of wine at the relevant price points, Defendants' wrongful intent in selecting and using the DRACULA and VAMPIRE marks, and Plaintiff's natural areas of expansion of Plaintiff's VAMPIRE and DRACULA brands, individually, and collectively indicate that  the likelihood of consumer confusion is unavoidable without Defendants removing Plaintiff's DRACULA and VAMPIRE marks from Defendants' product packaging and marketing.

67.    Defendants' wholesale distributors and its traditional downstream retailers are engaging in illegal conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of infringing goods in violation of the Lanham Act, as amended.

68.     Defendants have actual knowledge of its wholesale distributors and the traditional downstream retailers' illegal activities from, among other things, actively selling to its wholesale distributors with the intent for those wholesale distributors to sell the Accused Product to the traditional downstream retailers despite knowing of Plaintiff's registered trademarks for VAMPIRE and DRACULA and despite seeing Plaintiff's VAMPIRE and DRACULA products sold in the wine trade.

69.     Defendants have deliberately disregarded Plaintiff's trademark registrations and its actual sales of products online and in wine shops and have otherwise consciously chosen to disregard the resulting infringement that either is happening right now, or is about to happen at Defendants' traditional downstream retailers, once Defendants' Accused Product further spreads throughout the marketplace.

70.     Defendants have materially encouraged, enabled, and contributed to the infringing conduct of its wholesale distributors and the traditional downstream retailers by providing, among other things, the Accused Product to them and or otherwise selling to wholesale distributors it encourages to sell the Accused Product to the traditional downstream retailers.

71.     As a result of the actions of Defendants' wholesale distributors and the traditional downstream retailers' actions in infringing Plaintiff's DRACULA and VAMPIRE trademarks through their advertising, promotions, and selling of Defendants' Accused Products, Plaintiff has been damaged in an amount to be proved at trial and is  entitled to the profits of Defendants' wholesalers and the profits of their traditional downstream retailers which is estimated to be at least $15 per bottle sold.  This figure is in addition to Defendants TWE's estimate profits.  Furthermore, since a restaurant might treble or quadruple the cost of wine it purchases before

placing it on a wine list, for bars and restaurants, Plaintiff is entitled to approximately $36 per bottle of Accused Product sold.

72.    Defendants therefore bear contributory liability for unlawful sales by its wholesalers and the unlawful sales by the traditional downstream retailers' of Accused Product bearing Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

73.    Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory counterfeiting conduct of the Defendants.

## COUNT V
## FOR INDUCING TRADEMARK INFRINGEMENT

74.    Plaintiff repeats each allegation contained in paragraphs 1 through 73 as though set forth herein at length.

75.    As described above, Defendants distribute their Accused Products to third parties with the clear intent and purpose of inducing its wholesale distributors and its traditional downstream retailers to infringe on Plaintiff's DRACULA and VAMPIRE trademarks.  Defendants' wholesale distributors and traditional downstream retailers have and continue to infringe on Plaintiff's  DRACULA andVAMPIRE trademarks by advertising, promoting, and selling Defendants' Accused Products in the United States.

76.    As a result of Defendants' wholesale distributors and its traditional downstream retailers' actions in infringing Plaintiff's DRACULA and VAMPIRE trademarks through their advertising, promotions, and selling of Defendants' Accused Products, Plaintiff has been damaged in an amount to be proved at trial and is entitled to the profits of Defendants and the profits

of their wholesale distributors and the profits of their traditional downstream retailers.

77.    Defendants therefore are liable for inducing its wholesale distributors and its traditional downstream retailers to sell products that infringe upon Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

78.    Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the wrongful inducement of the Defendants.

## COUNT VI
## FOR VICARIOUS LIABILITY FOR TRADEMARK INFRINGEMENT

79.    Plaintiff repeats each allegation contained in paragraphs 1 through 78 as though set forth herein at length.

80.    The illegal sales of products that infringe on the Plaintiff's Trademarks have generated enormous sums of monies for the Defendants. Despite the Defendants' duty and right to control the downstream retailers infringing conduct, and the conduct of its wholesale distributors who Defendants sell the Accused Product to for the express purpose for them to sell the Accused Product to the traditional downstream retailers, Defendants have taken no steps to stop or otherwise prevent the ongoing infringing activity by its wholesale distributors and the traditional downstream retailers.  Instead, Defendants' conduct has been to encourage ongoing infringement.   Defendants are therefore vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and/or sale of the Accused Products by its downstream retailers in violation of 15 U.S.C. § 1051, et seq. and the common law.

81.   Plaintiff has sustained damages as a result of the Defendants' wrongful vicarious conduct in an amount to be determined at trial.  Plaintiff is also entitled to the profits of Defendants and their downstream retailers caused by the infringement of the downstream retailers.

82.   Defendants therefore are vicariously liable for the downstream retailers' infringement (and the wholesale distributors' infringement) of Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

83.   Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the wrongful inducement of the Defendants.

## COUNT VII
## UNFAIR COMPETITION – COMMON LAW, AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.

84.   Plaintiff repeats each allegation contained in paragraphs 1 through 83 as though set forth herein at length.

85.   Defendants have engaged in unfair competition perpetrated against Plaintiff by reason of the conduct alleged herein.

86.   The unlawful and unfair conduct is injuring the goodwill of Plaintiff and its lawful licensees.

87.   Defendants are liable for the unfair competition, and/or are liable for aiding and abetting such conduct.

88.   By this conduct, Plaintiff has directly suffered injuries and each Defendant has been unjustly enriched.

89.   Plaintiff is entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of their conduct.

**COMPLAINT**

90.     As a consequence of the unfair competition by Defendants, Plaintiff is suffering irreparable injury, by reason of which such conduct should be enjoined.

91.     Plaintiff is entitled to reasonable attorneys' fees.

92.     Plaintiff is informed and believes, and on that basis alleges, that the  aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

**COUNT VIII**
**UNFAIR COMPETITION – COMMON LAW, CALIFORNIA**
**BUSINESS & PROFESSIONS CODE §§ 17500 et seq.**

93.     Plaintiff repeats each allegation contained in paragraphs 1 through 92 as though set forth here at length.

94.     Defendants' use of Plaintiff's DRACULA and VAMPIRE trademarks misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods and services, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

95.     Defendants' use of Plaintiff's DRACULA and VAMPIRE trademarks is likely to deceive and will continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

96.     As a result of the conduct described above, Defendants have been and/or will be unjustly enriched at the expense of Plaintiff and the general public.  The interests of the general public and Plaintiff are, therefore, closely related.

97.    Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiff's DRACULA or VAMPIRE goods and/or goods sponsored by Plaintiff, but instead were purchasing Defendants' goods which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

98.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such acts of unfair competition and false advertising, and enjoining Defendants from continuing to market, promote, advertise, offer for sale, and sell, and advertise goods or services using the Dracula and Vampire marks. Plaintiff additionally requests an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by means of its acts of unfair competition and false advertising.  Plaintiff further requests they be paid interest and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

B.  That the Court adjudge and decree that Defendants have infringed Plaintiff's registered DRACULA and VAMPIRE trademarks.

C. That the Court adjudge and decree that Defendants unlawfully

diluted and diminished Plaintiff's rights in its Vampire Family of marks.

D. That the Court adjudge and decree that Defendants unlawfully Induced others to infringe upon Plaintiff's trademarks.

E. That the Court permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons acting in concert or participation with them or any of them from:

    a. Using DRACULA, VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and promotion of food or beverage products and accessories.

    b. Selling, offering to sell, marketing, distributing, advertising, and promoting any food or beverage product, good, or service with the word DRACULA or VAMPIRE (or similar word) displayed on any product, packaging, advertising, or promotional materials;

    c. Representing directly or indirectly by words or conduct that any food or beverage product, good, or service offered for sale, sold, promoted, or advertised by Defendant is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

    d. Aiding or abetting in unfair competition against Plaintiff;

    e. Aiding or abetting in false advertising; and

    f. Inducing others to engage in any of these aforementioned acts.

F. That the Court award an amount to be determined at trial, but at least an amount equivalent to between fifteen dollars ($15) per bottle sold in the off-premise trade and thirty-six ($36) per bottle sold to on sale accounts, such as

bars or restaurants, plus treble the amount of Defendants' illicit profits and its downstream distributor and retailer profits *(including profits made by Defendants from all sales of all other 19 Crimes wines since defendants intentionally used Plaintiff's mark to bring customers in to buy other19 Crimes products)*, or Plaintiff's lost profits, whichever is greater.

G. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising.

H. That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

I. That the Court order such other further and different relief as the nature of this action may require and as the Court may deem just and proper.

J. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all triable issues raised by the Complaint.

DATED this 29th day of August, 2023.

Respectfully submitted by:

/s/Michael Machat

Michael Machat, Esq.
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069

**COMPLAINT**

Telephone: (310) 860-1833
Email: michael@machatlaw.com
*Counsel for Plaintiff*

**COMPLAINT**

**EXHIBIT A**





















EXHIBIT B



$18.00 USD

# 19 Crimes Dracula Red Blend

Add To Cart

**Imported wine only ships to:**
CA, DC, FL, KY, MA, MN, NE, NV, NH, NM, NY, NC, ND, OR, SC, TN, WV, WI
learn more

Limited Edition 19 Crimes x Universal Monsters comes to life in the dark!

Dracula Story

Dracula is a vampire who has lived for centuries. And you know a 500-year-old dinner guest is going to have some great stories. So, pour him a glass, and let's get the evening started. Just no garlic, please

## Wine Specifications

**Vintage:** 2021
**Alcohol %:** 13.5
**Varietal:** Red Blend
**Tasting Notes**
Dracula Red Blend is rich and round with a soft fruity finish. Sweet aromatics with notes of chocolate.